MR. JUSTICE SHEEHY,
concurring and dissenting:
I concur with nearly all that is said in the foregoing opinion, but its otherwise excellent content is flawed by determining the loss of an investment tax credit in this case by Ehly as reasonably foreseeable. As to that item of damages, I dissent.
Loss of investment tax credit by reason of Ehly’s breach *105 fails here as an item of damages because it does not meet the tests of causation, certainty and foreseeability. Cady did not cause Ehly’s income tax liability; his income tax liability arose from the fact that Ehly was making money in other places. The loss of investment tax credit is not an item of damages clearly ascertainable in nature and origin. The loss would depend on tax laws which frequently change, the taxpayer’s circumstances, and a myriad of other possibilities. The injection of tax consequences as damages in such case as this present a quagmire. The District Court here was forced to consider possible tax shelters, exemptions, and complex tax laws which vary in result from year to year and from taxpayer to taxpayer. This case, in effect, turned from an action for breach of contract to a tax case. The District Court had to consider the tax laws for the year of the breach, 1981, and in awarding additional damages to cover possible taxes on the judgment award, the tax laws in the year of the trial. It should be a matter of judicial notice that there can be no certitude, even as to a single taxpayer, as to the income tax consequences of a breach of contract for the purchase and sale of a farm ranch. No certain method of mitigating such tax loss could be produced by the defense to reduce the claimed damages.
The first example of uncertainty is the fact that if Ehly had gained an interest in this property, even on a small downpayment in 1981, he would have no investment tax credit available. It was necessary for him not to take title until 1982. He never engaged in farming or ranching the Cady property so there can be no certainty as to whether Ehly would or would not have made a profit on the Cady ranch. Although the accountant in reaching the damage figure to which he testified on behalf of Ehly took into account a Montana income tax return, Ehly had never filed a Montana income tax return. The depreciation schedule propounded by the accountant on behalf of Ehly included 90 miles of fence at replacement cost, $270,000, although the existing fences were not replaced. The depreciation projec *106 tions also took into account the projected building of four dams and their estimated cubic yardage and cost. The dams did not exist at the time of trial. Although Ehly had agreed to buy from Cady cow/calves at $600 per pair, the accountant used the figure of $800 per pair for his depreciation schedules, the highest price at which cattle had been sold in 1981. The accountant used $411 per yearling in his depreciation schedule, although the price to Ehly would have been $360 apiece. The total result of the accountant’s testimony was that on the purchase price of $2,250,000, Ehly would have claimed total depreciation of $1,523,000.
The accountant’s testimony is the basis for the court’s award of damages for loss of investment tax credit. I insist that the testimony is too vague, uncertain and speculative to be accorded any relevance. For that reason, I would disallow the damages claimed on that item.